USHER (GIBBS v.). See Case No. 5,387.

---

## Case No. 16,805.

USHER v. McBRATNEY.

[3 Dill. 385.] [1]

Circuit Court, D. Kansas. 1874.

CONTRACTS—LOBBY SERVICES— ESTOPPEL — JUDGMENT BETWEEN OTHER PARTIES.

A contract providing a compensation for obtaining legislation, or to prevent legislative investigation into the affairs of a railway corporation, is void:—this principle applied and *held* to vitiate the defendant's claim to the land in

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

controversy, and the complainant's title was quieted.

[Cited in Sweeney v. M'Leod (Or.) 15 Pac. 279; Chippewa Valley & S. Ry. Co. v. Chicago, etc., Ry. Co., 75 Wis. 247, 44 N. W. 23.]

The land in question, section 14, T. 12, R. 20, in Leavenworth county, is part of the land which the Leavenworth, Pawnee, and Western Railroad Company was authorized to purchase by the treaty with the Delawares, of 1860 and 1861 (12 Stat. 1129, 1177). The name of that company was changed, and the Kansas Pacific Railway Company is its legal successor. The plaintiff [John P. Usher] has a title to the section of land in controversy, by deed from the Kansas Pacific Railway Company, the patentee, but subsequent in date to whatever rights the defendant [Robert McBratney] has under the agreement of April 9, 1862, and the title bond given to the defendant in consequence thereof, by the president and secretary of the railway company under its seal, dated December 15, 1862. On the 9th day of April, 1862, J. C. Stone, then acting for the railway corporation, made and delivered to the defendant a writing agreeing to convey to him "four sections of the land acquired of the Delawares, and four to be acquired from the Pottawattamies, provided that the treaty now pending before the United States senate for the purpose of securing said last named land shall be ratified without delay, and provided that no investigation of the affairs of the company shall be entered upon by the senate, with the consent of the Kansas senators, or any other act done which shall tend to delay the construction of the road. For the L. P. & W. R. R. Co. J. C. Stone, Attorney. Washington, April 9th, 1862." The bill prayed to quiet the plaintiff's title—he being in possession. The answer, after denying some of the allegations of the bill, set up that the contract under which the lands were acquired by Shoemaker & Co. were so acquired under a contract fraudulently entered into by the directors of the company, they being personally interested in the contract, of which the plaintiff had knowledge, and the answer also pleaded a recovery of the land in the state courts by the defendant, in a suit against the railway company, as an estoppel upon the plaintiff, whose rights were acquired before such suit, but whose deed was not obtained until afterwards. Replication and proofs.

J. P. Usher & C. E. Bretherton, for plaintiff.

Clough & Wheat and Griswold & Britton, for defendant.

DILLON, Circuit Judge. The legal title is in Mr. Usher, who is in possession, and is a purchaser for value. There is no proof of any authority from the railway company to Stone to make the agreement of April 9, 1862, which is the sole basis of the title bond

of December 15, 1862, or of McDowell to execute the title bond, but if such authority existed or is assumed, the paper of April 9, 1862, shows upon its face, and is also shown by the evidence, aliunde, to have been given for an illegal purpose, viz.: to suppress investigation and to influence the course of legislation.

The suit in the state court against the railway company is no estoppel as against the plaintiff. That was expressly decided by the supreme court of Kansas on the appeal in that case. Kansas Pac. Ry. Co. v. McBratney, 10 Kan. 415.

The defendant not being a stockholder in the railway company cannot set up that the Shoemaker & Co. contract was entered into by directors who had a personal interest in it, even if all the stockholders were not interested equally with the directors or did not ratify it by acquiescence or otherwise. As the plaintiff is in possession and as the title bond of the defendant is of record and the defendant asserts rights under it, the plaintiff is entitled to the relief he seeks against it and a decree accordingly may be entered. Decree accordingly.

NOTE. See Trist v. Childs, 21 Wall. [88 U. S.] 441; Weed v. Black [2 McArthur, 268]. The following is an extract from the brief of complainant's counsel on lobbying contracts:

(1) " 'All contracts for a contingent compensation for obtaining legislation are void by the policy of the law.' Grier, J., in Marshall v. Baltimore & O. R. Co., 16 How. [57 U. S.] 366. See, also, Clippinger v. Hepbaugh, 5 Watts & S. 315; Wood v. McCann, 6 Dana, 366; Bryan v. Reynolds, 5 Wis. 200.

(2) " 'A contract for a contingent compensation to use personal influence on legislators is void by the policy of the law.' Grier, J., Marshall v. Baltimore & O. R. Co., supra. Same doctrine, Clippinger v. Hepbaugh, supra; Rose v. Truax, 21 Barb. 361; Frost v. Belmont, 6 Allen, 159. In Rose v. Truax it is said that an agreement in respect to lobby services, and in effect providing for the sale of an individual's personal influence to procure the passage of a private law by the legislature, is void, as being inconsistent with public policy, and will not support an action; and if the contract be an entire one, and it be void in part, it is void in toto.

(3) " 'All agreements for pecuniary considerations to control the course of legislation are void as against the policy of the law.' Field, J., in Tool Co. v. Norris, 2 Wall. [69 U. S.] 45. See, also, Pingry v. Washburn, 1 Aikens, 264; Mills v. Mills, 40 N. Y. 543; Harris v. Roof's Ex'rs, 10 Barb. 489. The position of attorneys for public and open advocacy of such measures before legislative committees, or other similar bodies sitting in a quasi judicial capacity, is distinguished in Wood v. McCann, supra; Sedgwick v. Stanton. 14 N. Y. 289; Bryan v. Reynolds, 5 Wis. 200, and Lyon v. Mitchell, 36 N. Y. 235. Hunt, J., says: 'It is allowable to employ counsel to appear before a legislative committee, or before the legislature itself, to advocate or oppose a measure in which the individual has an interest, for an honest purpose, avowed to the body before which the appearance is made, and by the use of just argument and sound reasoning; this is lawful. Personal soliciting of legislators is not a lawful subject of contract.' In the later case of Mills v. Mills, much stronger and more sweeping language is used. The court said: 'It is not necessary to adjudge that the parties stipulated for corrupt action, or that they

intended that secret and improper resorts should be had. It is enough that the contract tends directly to these results. It furnishes a temptation to the plaintiff to resort to corrupt means or improper devices to influence legislative action. It tends to subject the legislature to influences destructive of its character and fatal to public confidence in its action.'

(4) " 'Such agreements are void, although no improper influences were contemplated or used, and although part of the consideration was lawful.' Field, J., in Tool Co. v. Norris, 2 Wall. [69 U. S.] 45. Same principle, Filson's Trustees v. Himes, 5 Pa. St. 542; Bryan v. Reynolds, supra; Rose v. Truax, supra; Mills v. Mills, supra.

(5) "Such agreements are not merely voidable, or capable of rescission, but are mala in se. absolutely void, and without effect. Martin v. Wade, 37 Cal. 168; Rose v. Truax, supra; Hunter v. Nolf, 71 Pa. St. 284.

(6) "All contracts for a pecuniary consideration for influencing a public officer in. the discharge of his duty are void. Cook v. Shipman, 51 Ill. 316; Bowman v. Coffroth, 59 Pa. St. 19; Hatzfeld v. Gulden. 7 Watts, 152; Fuller v. Dame, 18 Pick. 472; Filson's Trustees v. Himes, supra; Hunter v. Nolf, supra; Workman v. Campbell, 46 Mo. 305. Case of brokers for sale is distinguished in Lyon v. Mitchell. 36 N. Y. 235, disproving Tool Co. v. Norris on this point. But see the dissenting opinion of Grover, J., at page 682 of same volume. Winpenny v. French, 18 Ohio St. 469." See, also, Union Pac. R. Co. v. Durant [Case No. 14,377].

USHER (McBRATNEY v.). See Case No. 8,661.

USHER (MADDUX v.). See Case No. 8,936.

USTICK (POSTMASTER GENERAL v.). See Case No. 11,315.

UTICA, The (SMITH v.). See Case No. 13,-123.